

# NUMBER 13-18-00014-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI–EDINBURG

JOSEFINA M. CURIEL,                                               **Appellant,**

**v.**

THE STATE OF TEXAS,                                               **Appellee.**

### On appeal from the County Court at Law No. 3
### of Cameron County, Texas

## MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Perkes
### Memorandum Opinion by Justice Perkes

A jury found appellant Josefina M. Curiel guilty of misdemeanor theft of property valued at $500 or more but less than $1,500. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(3). The trial court assessed punishment at eighteen months' confinement in the Cameron County Jail, suspended for twelve months of community supervision. By three

issues, which we have reordered and consolidated, Curiel argues: (1) the evidence was legally[1] insufficient to support a theft conviction; (2) the trial court erred in admitting evidence of prior bad acts; and (3) the trial court erred in failing to submit a jury charge instruction on fair market value. We affirm.

## I. BACKGROUND

Curiel was arrested on June 3, 2015, after Kohl's loss prevention personnel observed Curiel shoplifting. Curiel pleaded not guilty. At a motion in limine hearing prior to trial, Curiel's counsel sought to prevent the State from eliciting testimony regarding an unadjudicated Walmart theft from 2011 and unrelated misdemeanor Walmart theft conviction in 2016. No other prior convictions or bad acts were discussed. The trial court granted Curiel's motion in limine.

### A. State's Case-in-Chief

At trial, the State called Jose Munoz, a loss prevention officer at Kohl's in Brownsville, as its first witness. Munoz recalled monitoring the store's exterior cameras closely on June 3, 2015, because it was a weekday and foot-traffic in the store was slow. At approximately 1:17 p.m., Munoz observed Curiel place an empty Kohl's plastic shopping bag into a cart before entering the store. When asked by the State to "walk [the jury] through what happened[,]" Munoz replied that Curiel "matched the description of a shoplifter that [his] manager had pointed out." Curiel immediately objected.

Outside the presence of the jury, the trial court attempted to ascertain how the witness was familiar with Curiel and whether the motion in limine was violated. Because

---

[1] Curiel also complains that the evidence is factually insufficient to support her conviction. However, criminal verdicts can no longer be challenged on the grounds of "factual" insufficiency of the evidence. *See Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 (1979)).

2

Munoz did not explicitly identify Curiel as a known shoplifter, and instead, stated that she "matched the description" of a shoplifter, the trial court distinguished Munoz's statements from those prohibited under the ruling. The trial court overruled Curiel's objection, denied Curiel's request for a mistrial, and admonished the State: "I understand that these witnesses are interviewed at the last minute; but I do think that is very close to a violation of the motion in limine."

Munoz's testimony continued. While Munoz's supervisor Juan Antonio Rosendo monitored Curiel's movements via security cameras,[2] Munoz followed Curiel for two hours, disguised as a customer in plain-clothes. Munoz witnessed Curiel "feel for sensors," a movement Munoz associated with shoplifting. "[Shoplifters] run their hands through the whole clothing to see if there's [sic] sensors on the clothing," explained Munoz.

Munoz testified that as soon as he observed Curiel walking in the direction of the fitting rooms, he quickly went into each of the five stalls to remove any previously left-behind merchandise. Curiel entered the fitting rooms shortly after, where she remained for approximately twenty minutes. After Curiel exited, Munoz re-entered the stall, and he observed empty hangers and clothing scattered about. Munoz counted more hangers than there were items of clothing left behind. Meanwhile, Curiel proceeded to the cash registers, where she interacted with the cashier for five minutes before Curiel purchased five items. Curiel then placed her single shopping bag into her cart and exited the store walking backwards.

---

[2] The State admitted into evidence several hours of video surveillance footage from multiple cameras situated around the store.

Once in the parking lot, Munoz and Rosendo contacted Curiel and asked her to return inside the store. Munoz stated he recovered clothing and jewelry with tags still affixed inside a plastic bag underneath the bag of five items that Curiel purchased. Several of the items taken matched items that Curiel was seen on surveillance placing into her cart. Munoz determined the twenty-seven items recovered were collectively valued at $933. Munoz testified the amount was based on the combined retail price although several items recovered were marked as clearance.

During cross-examination, Curiel asked Munoz to better explain his usage of the term "retail."

Q. See, because the term "retail," I'm trying to define what retail means. It's an important term for the ladies of the jury because you've accused her of having stolen over $500 of items. But the valuation comes from what? Because retail item is the item—when an item is for sale and the price of that item; is that correct?

A. No, sir.

Q. That is not correct. So what does retail mean?

A. Retail means the price that's on the tag which is marked value at all the stores. If you go to JCPenney, they'll have the same $30 Nike shirt. If you go to Kohl's, it's going to have the same $30 Nike shirt. If you get it on sale, you might get it for $20. At JCPenney, you might get it for [$]25. That's the sale price.

. . .

Q. Okay. Just to be certain because the ladies are going to hear this, you put here at [State's Exhibit] No. 13 Chaps men's shirts?

A. Yes.

Q. You put the retail price at $60?

A. Yes, sir.

4

> Q. Now, what we do know is once you blow that up, what's the sticker price for that shirt?
>
> A. That's the clearance sticker. We go by the tag.
>
> . . .
>
> A. The sale price is $24.

Curiel also questioned whether it was possible to return clothing items without a receipt and whether what Munoz, in fact, observed was Curiel "pick[ing] items to replace the ones she walked in with." Munoz testified that pursuant to Kohl's policy, items could be returned and exchanged without a receipt. However, Munoz testified that he did not see Curiel ask any Kohl's staff about an exchange, nor did he believe the plastic Kohl's shopping bags Curiel entered with contained any merchandise. Rosendo's testimony at trial paralleled Munoz's.

**B.    Defense's Case-in-Chief**

During direct-examination, Curiel spoke at-length about the "embarrassing" day that she would "never forget[.]" Curiel testified: "It was my birthday and my son's birthday. And we were going to celebrate the date. We were going to go to church and then eat somewhere and praise." But before effectuating her birthday plans, Curiel decided to go to Kohl's to exchange some clothing that she had received. According to Curiel, a friend who now resides in California had given her clothing, unwrapped and still inside a Kohl's plastic bag. Her son's girlfriend also "gave him the bag with his clothes." Neither the friend nor girlfriend provided Curiel with a receipt. Though not captured on any surveillance camera recording, Curiel testified that a Kohl's sales associate instructed her to find clothes to exchange with the ones she sought to return.

5

Curiel explained that her leisurely pace hastened after she received a call from her daughter telling her that she "need[ed] to hurry because it [was] almost time" for church. Once in the fitting room, which Curiel described as a "mess," Curiel received a text message from her son, asking her to "[j]ust leave it there. Leave everything there and come home." At that point, Curiel claimed she left everything: "The shirts, the blouses, the bracelets, everything that I got [sic]. Everything that I was going to exchange, I leave [sic] it in the dressing room."

Curiel paid for a handful of items that were on clearance and left the store. She said she was then approached by an unknown man in the parking lot, who urged her to return inside. Curiel stated that she complied and was taken to a room, where she became the recipient of "bad words" and "laught[er]" from Munoz and Rosendo.

During cross-examination, the State asked Curiel to elaborate how she knew precisely which items to replace if she never removed the items from the bag to check or compare.

Q. So you're saying these are exact duplicates of this?

A. Different sizes.

Q. Different sizes? How do you know what sizes you got there as compared to the bag's size? You memorized the entire contents of your bag?

A. Yes. I knew what sizes were like.

When asked what size she wore, Curiel initially testified that she did not remember, before answering: "It depends the kind of clothes. Sometimes I can be small. Sometimes I can be medium. Sometimes I can be large. It depends, you know . . . ."

6

Curiel then accused Kohl's of stealing from her and mistreating her. Curiel stated she recalled telling Munoz, "I'm going to sue because of what you did to me." After a brief discussion outside the presence of the jury, questioning resumed and Curiel subsequently claimed she did not "remember" and "didn't know" whether she brought a suit against Kohl's. Further questioning prompted Curiel to admit that she filed suit against Kohl's on June 2, 2017, claiming $100,000 in damages for defamation, false imprisonment, and intentional infliction of emotional distress.

## C. Charge Conference

During the jury charge conference, Curiel requested a definition of "fair market value." The trial court denied Curiel's request, stating, "I am not inclined to include: 'Fair market value means the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is not under the necessity of buying.' That sounds unduly complicated. . . ." Instead, the trial court included the language provided by the statute. *See* TEX. PENAL CODE ANN. § 31.08(a), (c).

The jury returned a guilty verdict, and the judge assessed Curiel's punishment. This appeal followed.

## II. LEGAL SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review and Applicable Law

When reviewing claims of legal insufficiency, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Whatley v. State*, 445 S.W.3d 159, 166

7

(Tex. Crim. App. 2014); *Martinez v. State*, 527 S.W.3d 310, 320 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd). The fact finder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the testimony and is presumed to have resolved any conflicts in the evidence in favor of the verdict. *See Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008); *see also Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (giving deference to the fact-finder "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." (citing *Jackson*, 443 U.S. at 318–19)). In reviewing the legal sufficiency of the evidence, we also treat direct and circumstantial evidence equally because circumstantial evidence is just as probative as direct evidence in establishing the guilt of a defendant. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)); *Proenza v. State*, 471 S.W.3d 35, 43 (Tex. App.—Corpus Christi–Edinburg 2015), *aff'd in part and remanded*, 541 S.W.3d 786 (Tex. Crim. App. 2017).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). In this case, a hypothetically correct charge would instruct the jury to find a defendant accused of misdemeanor theft guilty if he or she "unlawfully appropriates property with the intent to deprive the owner of the property," TEX. PENAL CODE ANN. § 31.03(a), and "the value of the property stolen is $500 or more but less than $1,500." *Id.* § 31.03(e)(3).

"Appropriate," in this context, means "to acquire or otherwise exercise control over property other than real property," *id.* § 31.01(4)(B), and "[a]ppropriation of property is

8

unlawful" if "it is without the owner's effective consent." *Id.* § 31.03(b). "Value" is defined in the theft chapter of the penal code as the "fair market value of the property or service at the time and place of the offense; or if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft." *Id.* § 31.08(a)(1), (2). Because "fair market value," a term appearing in the definition for "value," is not defined by the statute, "methods of proving fair market value have varied from showing retail price or sale price, to admitting testimony of an owner's opinion of value, to a non-owner's, 'expert' opinion of value." *Keeton v. State*, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991). For purposes of the theft statute, a loss-prevention officer in a company store qualifies as the owner of the company's merchandise or property. *See Freeman v. State*, 707 S.W.2d 597, 603 (Tex. Crim. App. 1986); *Sandone v. State*, 394 S.W.3d 788, 792–93 (Tex. App.—Fort Worth 2013, no pet.).

We now address Curiel's two evidence-based arguments that the property in question belonged to her and that the State failed to prove the value of the property.

**B.     Unlawful Appropriation Analysis**

Curiel argues that the merchandise found in her possession, located under the bag of recently-purchased merchandize, were items belonging to her that she initially sought to exchange—therefore, she did not unlawfully appropriate any property. *See* TEX. PENAL CODE ANN. § 31.01(4)(B).

According to Curiel, the items confiscated from her cart matched the items loss prevention officers observed Curiel select while shopping because she was looking for duplicative items in alternate sizes to exchange the clothing she brought in. As to where

9

she discarded the duplicate items, Curiel maintained she left them in the "messy" dressing room—a fact Munoz contested.

Because the evidence is conflicting, our role is to determine whether legally sufficient evidence supports the finding that Curiel unlawfully appropriated the merchandise at issue; we do not make an independent determination of Curiel's credibility. *See Bartlett*, 270 S.W.3d at 150; *Hooper*, 214 S.W.3d at 13. The surveillance video and the reported observations by loss prevention officers constitute evidence that, if believed, establish that appellant unlawfully appropriated property when she: (1) entered the store without clothing to exchange; (2) did not discard all her unwanted items in the dressing room; and (3) was found past the point of sale in possession of items matching the items loss-prevention officers witnessed her place into her cart. *See* TEX. PENAL CODE ANN. § 31.03(b); *see also Clayton*, 235 S.W.3d at 778 (circumstantial evidence constitutes "direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven," and it alone can be sufficient to establish guilt); *Keeton*, 803 S.W.2d at 305. The jury here implicitly rejected Curiel's argument of lawful possession in its verdict against her. *See Bartlett*, 270 S.W.3d at 150; *Hooper*, 214 S.W.3d at 13; *see also Dixon v. State*, 43 S.W.3d 548, 552 (Tex. App.—Texarkana 2001, no pet.) (whether an appellant's explanation is true or reasonable is a question of fact resolved by the trier of fact).

Accordingly, viewing the evidence under the appropriate standards and applicable law, the evidence is sufficient to prove Curiel unlawfully appropriated merchandise.

## C. Value Analysis

Curiel next contends that the State failed to prove the amount stolen as required under the statute.

Loss prevention officers testified that the collective retail value of the merchandise equaled $933. *See Freeman*, 707 S.W.2d at 603; *Sandone*, 394 S.W.3d at 792–93. Munoz conceded that several items recovered were on clearance. Munoz also stated it was store policy to hold thieves responsible for the retail value of the items. Unlike paying shoppers, shoplifters do not get the benefit of the sale price, Munoz said. *See Keeton*, 803 S.W.2d at 305 (affirming the judgment where the trier of fact was "presented with two values to decide between in determining the fair market value," and it resolved the conflict when it selected "the normal retail price, not the lower sale price").

Munoz's testimony alone regarding the merchandise value, although based on the "retail" value and a deviation from the "sales" value, if believed, was sufficient to prove the value of the items stolen. *See id.*; *see also Jimenez v. State*, 67 S.W.3d 493, 505 (Tex. App.—Corpus Christi–Edinburg 2002, pet. ref'd) ("When the owner testifies, the presumption is that he is testifying to an estimation of the fair market value." (citing *Scott v. State*, 741 S.W.2d 435, 437 (Tex. Crim. App. 1987); *Trammell v. State*, 511 S.W.2d 951, 954 (Tex. Crim. App. 1974))).

Considering the cumulative force of all of the evidence, viewed in the light most favorable to the verdict, drawing reasonable inferences based on that evidence, presuming the factfinder resolved any conflicting inferences in favor of the prosecution, and deferring to that resolution, we conclude that a rational fact finder could have found each element of misdemeanor theft of property valued at $500 or more but less than

11

$1,500 beyond a reasonable doubt.   *See* Tex. Penal Code Ann. § 31.03(a), (e)(3); *see also Whatley*, 445 S.W.3d at 166; *Clayton*, 235 S.W.3d at 778.   We hold the evidence was legally sufficient to support Curiel's conviction.   Curiel's first issue is overruled.

### III.  Prior Bad Acts

By her second issue, Curiel asserts that the trial court erred in allowing the State's witness to testify about appellant's prior bad acts in violation of its motion in limine ruling and the Texas Rules of Evidence.   *See* Tex. R. Evid. 404(b)(1).

### A.    Standard of Review and Applicable Law

We review a trial court's decision on admissibility of evidence under an abuse of discretion standard.   *Dabney v. State*, 492 S.W.3d 309, 316 (Tex. Crim. App. 2016) (citing *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)).   We will uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement.   *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *Martinez*, 527 S.W.3d at 325.

In general, Rule 404 prohibits evidence of other crimes, wrongs, or bad acts admitted for the purpose of proving action in conformity therewith.   *See* Tex. R. Evid. 404(b)(1).   Rule 404 exists "to counter the possibility that evidence may be admitted to show a defendant's corrupt nature from which the jury may then render a verdict not on the facts of the case before them, but, rather, on their perception of the defendant's character."   *Jones v. State*, 571 S.W.3d 764, 785 (Tex. Crim. App. 2019) (quoting *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996), *withdrawn in part on reconsideration*, 974 S.W.2d 707, 717 (Tex. Crim. App. 1998) (op. on reh'g)).

The purpose of a motion in limine is to prevent particular matters, including evidence of prior convictions and bad acts, from coming before the jury. *Geuder v. State*, 115 S.W.3d 11, 15 (Tex. Crim. App. 2003) ("[A motion in limine] is, in practice, a method of raising objection to an area of inquiry prior to the matter reaching the ears of the jury through a posed question, jury argument, or other means." (quoting *Norman v. State*, 523 S.W.2d 669, 671 (Tex. Crim. App. 1975))). A trial judge's ruling on a motion in limine, however, is preliminary and "normally preserves nothing for appellate review." *Id.*; *see Methodist Hosps. of Dall. v. Corp. Communicators, Inc.*, 806 S.W.2d 879, 883 (Tex. App.—Dallas 1991, writ denied) ("On appeal, the party may not predicate his complaint on a motion in limine.").

## B.  Analysis

Curiel specifically complains of one instance in which evidence of her prior bad acts were admitted before the jury, arguing the State deliberately "elicited testimony from it's [sic] first witness that [she] was a known shoplifter."

We first note that the State's question, which prompted Curiel's objection, was without reference to bad acts:  "So why don't you walk us through what happened on June 3rd, 2015?"  To which, Munoz replied:  "On that day, on June 3rd, I was working cameras.  I happened to be observing the outside camera, which is our parking lot camera for the store; and I observed the female which matched the description of a shoplifter that our manager had pointed out."  Thus, it was not deliberate.

We have found no case law, nor has Curiel provided us with any, which supports a finding that testimony that a defendant matches the description of a known offender is tantamount to testimony identifying the defendant as the known offender. *See generally*

*Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993) (despite an appellant's assertion that "evidence was somehow evidence of other crimes, wrongs, or acts under Tex. R. Crim. Evid., Rule 404(b), . . . the evidence must show a crime or bad act, and that the defendant was connected to it."); *cf. Hackett v. State*, 160 S.W.3d 588, 592 (Tex. App.—Waco 2005, pet. ref'd) (where an officer testified that the victim had selected the appellant's photograph from a "series of mug books with pictures of known offenders," the appellant's presence in mug books implied the appellant "had committed other crimes in the past" and thus, improperly referenced extraneous conduct).

Therefore, the trial court did not abuse its discretion in permitting the admittance of the State's evidence nor in its determination that the motion in limine had not been violated. *Gonzalez*, 544 S.W.3d at 370; *Martinez*, 527 S.W.3d at 325. We overrule Curiel's second issue.

### IV. JURY CHARGE ERROR

By her third issue, Curiel asserts the trial court committed error by refusing to include her requested definition for "fair market value" in the jury charge.

### A. Standard of Review

An erroneous or incomplete jury charge does not result in automatic reversal of a conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 36.19; *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994) (en banc)). Our review of alleged jury charge error involves a two-step process. *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Farris v. State*, 506 S.W.3d 102, 108 (Tex. App.—Corpus Christi–Edinburg 2016, pet. ref'd). Initially, we determine whether error exists, and only if error is found, do we then determine whether harm resulted, with the level of harm analyzed contingent on a

14

defendant's preservation of error. *Abdnor*, 871 S.W.2d at 731–32. We will review for "some harm" where a timely objection was made at trial. *Sanchez v. State*, 376 S.W.3d 767, 774 (Tex. Crim. App. 2012) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g))). By contrast, where the error is raised for the first time on appeal, we will search for "egregious harm." *Id.*

## B.   Applicable Law and Analysis

Curiel acknowledges in her brief that the trial court included the statutory definition of value, an element present in the theft statute and misdemeanor complaint and information against her. Nonetheless she argues that such inclusion "was reversible error and denied [her] of her fundamental right to a fair trial."

Here, the objectionable portion of the jury charge reads:

> 'Value' means the fair market value of the property at the time and place of the offense; or if the fair market value of the property cannot be ascertained at the time of the offense, value is the cost of replacing the property within a reasonable time after the theft. If property has value that cannot be reasonably ascertained at the time of the offense or a reasonable time after the offense, the property is deemed to have the value of $500 or more but less than $1,500.

The first sentence is taken verbatim from § 31.08(a)(1), (2) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 31.08(a)(1), (2) (defining "value" in the context of the theft chapter). The second sentence in the charge is in reference to § 31.08(c), which states: "If property or service has value that cannot be reasonably ascertained by the criteria set forth in Subsections (a) and (b),[3] the property or service is deemed to have a value of $500 or more but less than $1,500." *Id.* § 31.08(c).

---

[3] Section 31.08(b) exclusively speaks to the value of documents. TEX. PENAL CODE ANN. § 31.08(b)(1), (2).

15

Curiel specifically objected to the inclusion of § (c), which Curiel argues sets "a default value of $500 or more." Curiel also sought to include language from a Texas Supreme Court case upholding a jury instruction defining the "fair market value" as "the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying." *City of Pearland v. Alexander*, 483 S.W.2d 244, 247 (Tex. 1972).

In support of her position, Curiel broadly cites to two cases:[4] *Keeton*, 803 S.W.2d at 304, and *Dowden v State*, 537 S.W.2d 5, 6 (Tex. Crim. App. 1976). *Keeton* does not stand for the proposition alleged by Curiel, and *Dowden* is inapplicable. *Keeton*, 803 S.W.2d at 305; *Dowden*, 537 S.W.2d at 6.

In *Keeton*, the court dealt with a similar fact pattern. 803 S.W.2d at 305. Keeton stole two typewriters which were on sale for $359.99 at the time of the theft. *Id.* The store's manager testified that the retail value for each item was $479.99. *Id.* The jury convicted Keeton under the retail value. *Id.* The court affirmed the trial court's judgment and noted that "[m]ethods of proving fair market value have varied from showing retail

---

[4] Curiel also cites to *Muniz v. State*, 851 S.W.2d 238 (Tex. Crim. App. 1993). In *Muniz*, the Court of Criminal Appeals held that when evidence from any source raises a defensive issue, and the defendant properly requests a jury charge on that issue, the trial court must submit the issue to the jury. *Id.* Curiel's argument, in its entirety, is as follows:

> Furthermore, an accused is entitled to an instruction on every defensive issued raised by the evidence. *See* [*Muniz*, 851 S.W.2d at 238]. In this case, Appellant's trial issues included the defensive issues that the fair market value of over $500 was not proven beyond a reasonable doubt and a definition of "fair market value" in the jury charge was required.

To the extent Curiel also raises on appeal an issue of instruction entitlement on the basis of a defensive issue raised by the evidence, we conclude that the issue is inadequately briefed, and Curiel has waived the argument on appeal. *See* TEX. R. APP. P. 38.1(i); *Wolfe v. State*, 509 S.W.3d 325, 342 (Tex. Crim. App. 2017) ("[A]n appellate court has no 'obligation to construct and compose [an] appellant's issues, facts, and arguments with appropriate citations to authorities and to the record.'" (quoting *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008))).

16

price or sale price, . . . to admitting testimony of an owner's opinion of value. . . . No one method has ever been held to be exclusive." *Id.* at 305 (internal citations omitted). The court held that "while the sale price may be some evidence of fair market value, it is certainly not the only evidence[.]" *Id.*

*Dowden* speaks to the forbiddance of convictions predicated on charge language which allows for jury consideration of elements not applicable to the indicted offense. *Dowden*, 537 S.W.2d at 6 ("The statutes do not authorize a conviction for robbery if the proof only shows that a person [r]ecklessly placed another in fear of imminent bodily injury or death, and yet the court's charge here authorized a finding of guilt upon precisely that finding."). The inclusion of the definition of "value" here, which is provided for by the theft statute and a necessary element of the offense, does not amount to the inclusion of a portion of the statute unrelated to the indictment or information. *Cf. Dowden*, 537 S.W.2d at 6.

As discussed above, although "value" is statutorily defined, "fair market value"—a phrase used in part to define "value"—is not. *See* TEX. PENAL CODE ANN. § 31.08(a)(1), (2); *Keeton*, 803 S.W.2d at 305; *but see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (requiring that the trial court "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case."). Curiel cites no authority, nor have we found any, to support a finding that the trial court is obligated to include a definition of "fair market value" in a charge before a jury can determine the value of items at issue in a theft offense. *See Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015). On the contrary, "[a]s a general matter, definitions for terms that are not statutorily defined are not considered to be the 'applicable law' under Article 36.14 [of the Texas Code of Criminal Procedure], and

17

it is thus generally impermissible for the trial court to define those terms in the jury instructions." *Id.*; *Walters v. State*, 247 S.W.3d 204, 212 (Tex. Crim. App. 2007) (the defendant is not entitled to a special jury instruction "relating to a statutory offense or defense if that instruction (1) is not grounded in the Penal Code, (2) is covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or a defense"); *see also Lewis v. State*, 656 S.W.2d 472, 474 (Tex. Crim. App. 1983) (holding that the theft charge was not "fundamentally defective" for failure to include a definition of the term "unlawful appropriation"—an element of theft and defined in the statute).

As a consequence, the error that Curiel complains of is not present. The trial court properly left it to the parties to argue the significance of the term "value" and did not err in its inclusion of the definition of value nor in its refusal to submit Curiel's requested instruction for "fair market value." *See Green*, 476 S.W.3d at 445; *Walters*, 247 S.W.3d at 214; *Keeton*, 803 S.W.2d at 305. We overrule Curiel's third issue.

## III. CONCLUSION

The trial court's judgment is affirmed.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
22nd day of August, 2019.