

## NUMBER 13-24-00489-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

NELSIN RAY WHITE,                                                        Appellant,

v.

THE STATE OF TEXAS,                                                     Appellee.

## ON APPEAL FROM THE 24TH DISTRICT COURT
## OF JACKSON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Cron and Fonseca
Memorandum Opinion by Justice Cron**

Appellant Nelsin Ray White, his brother Jessie White, and Blake Powell were indicted for engaging in organized criminal activity (Count I), a first-degree felony, and the predicate offense of felony theft of property valued at more than $30,000 but less than $150,000 from an elderly individual (Count II), a second-degree felony. *See* TEX. PENAL CODE §§ 31.03(e)(5), (f)(3)(A), 71.02(a)(1). A jury convicted Nelsin of Count I and

sentenced him to thirty years' imprisonment. *See id.* § 71.02(a)(1). By five issues, which we have reorganized, Nelsin contends: (1) the evidence was insufficient to support his conviction; (2) his trial counsel was ineffective for failing to raise a limitations defense to Count I; (3) his counsel was ineffective for failing to suppress cell-site location evidence the State relied on to corroborate Powell's accomplice-witness testimony; (4) the trial court erred by admitting evidence of extraneous offenses and bad acts during the guilt-innocence phase of trial; and (5) the trial court erred by submitting a special instruction to the jury after the State had abandoned the language in the indictment. Because we agree with Nelsin on issue two, we reverse and remand.

## I.    BACKGROUND

This case involves a tractor theft that occurred on October 2, 2018. The original indictment was filed against the Whites and Powell on March 25, 2020, and the State filed a superseding indictment on May 3, 2024. The superseding indictment does not contain tolling language, and although the similarities and differences between the two indictments will be discussed in greater detail below, we note for context that the superseding indictment identified six other members of the alleged combination, none of whom were indicted in this case. The Whites were tried together, and Powell testified against the brothers as an accomplice witness. The following evidence was adduced at trial, which began on October 1, 2024.

On October 2, 2018, at approximately 3:21 p.m., George Weldon Burt called 911 to report that his John Deere tractor had been stolen from his property on the outskirts of La Ward, a city in Jackson County later described by one witness as "a very rural

2

environment." Burt confirmed at trial that he did not give anyone permission to take his tractor, which he said cost "in the vicinity of 70 something thousand dollars" when he purchased it. Burt's insurance carrier paid him $52,323.24 for the loss.

Deputy Christopher Marlow with the Jackson County Sheriff's Office (JCSO) responded to the call. He interviewed two witnesses, Thomas Roberts and Dan Schicke. Roberts was working outside a few hundred yards down the street from Burt's property, and Roberts described to the jury what he observed that day. Between 11:00 a.m. and 12:00 p.m., he saw a white four-door car park along State Highway 172 across from Burt's property. Two people exited the vehicle and crossed the highway toward Burt's property. Roberts also observed a pickup truck pulling an empty trailer park near Burt's property. Roberts described the color of the truck as "bluish purple" at trial, but he described it as "white" to Deputy Marlow on October 2, 2018. One of the occupants from the car "jumped on the tractor," started it, and loaded it onto the trailer while two other people stood lookout. Once the tractor was loaded, "they took off" without securing the tractor to the trailer. The two vehicles then proceeded southbound on State Highway 172.

On the day in question, Roberts told Deputy Marlow that the person who drove the tractor onto the trailer was a "medium build Mexican" with "dark skin." At trial, he described the same person as "dark skinned" but said he could not tell what ethnicity the man was. Roberts could not explain why he described the person as "Mexican" on October 2, 2018, but he agreed that the men were "about 360 yards" away when he observed them. The record reflects that Nelsin and Jessie are African American.

Schicke, Burt's neighbor, also observed the incident, but he passed away before

3

trial. He was able to record the truck's license plate number and reported it to police. Jeremy Crull, then working for JCSO, was the lead detective on the case. Detective Crull testified that he "ran that license plate through a vigilant license plate reader number," which indicated the vehicle, a "white" Chevrolet Silverado, was registered to Powell and his wife.

Detective Crull interviewed Powell at the Fort Bend County Sheriff's Office, along with two investigators from that department. Those investigators, Detectives Hatfield and Carter, were investigating "similar crimes" that "involve[d] the same people," according to Detective Crull. Detective Crull testified that the Whites had been identified as suspects in residential burglaries in Jackson County, as well as "similar offenses" that occurred "in Fort Bend County, Wharton County, several counties." He further testified that other investigators with JSCO developed evidence that the Whites were part of a "crime ring" that "[i]nvolved a large group of suspects" committing vehicle thefts and burglaries in seven counties. According to Detective Crull, a license plate reader placed Powell's vehicle on some unspecified date "in [the] area of Seabourne Meadows," which is "near the residence of Jessie or Nelsin White" in Fort Bend County.

Powell told Detective Crull during the interview that the Whites had hired him to haul Burt's tractor that day. Powell, an accomplice witness as a matter of law, testified that he was an out-of-work tow truck driver living in Sugar Land when he met the Whites at a Super Bowl party in 2018. According to Powell, Nelsin lived in Seabourne Meadows, a neighborhood in Rosenberg, which is in Fort Bend County, and Jessie lived in Needville, another city in Fort Bend County. Powell testified that he "pulled tractors" for Nelsin and

4

Jessie "seven or eight times," including "a tractor from the La Ward area." The Whites typically paid Powell "[b]etween two and five hundred [dollars]" in "[c]ash" for each job. He said that each occurrence played out in a similar fashion: beforehand, the three men would "steal" a trailer and attach it to Powell's pickup; later, the Whites, each in their own vehicle, would lead Powell to the location of a tractor; once there, the Whites would quickly load the tractor onto the trailer and strap it down; and finally, the Whites would escort Powell to a new location where the Whites would sell the "stolen" trailer and tractor to a prearranged buyer. For instance, Powell recalled hauling one tractor to a gas station in Victoria and the Whites selling the trailer and tractor to men "driving a white Dodge." Powell said that, because the men would drive separate vehicles, they used cell phones to communicate, and for as long as he had known the Whites, each maintained the same cell phone number. As to the predicate offense, Powell recalled that on October 2, 2018, the three men loaded Burt's tractor in La Ward, Powell hauled the tractor to a Citgo gas station on State Highway 35 along the Texas Gulf Coast, the Whites sold the trailer and tractor to some "Hispanic men," the three men then drove to a friend's house in Rosenberg, and Powell was paid "$400."

Detective Crull testified that, after Powell implicated the Whites, he used "a law enforcement database" called "TLO" to identify cell phone numbers associated with Nelsin and Jessie. He obtained a search warrant to seize thirteen different categories of electronic consumer data, including cell-site location data, for each phone number from October 1, 2018, to October 3, 2018. Each search warrant application was supported by an affidavit from Detective Crull, and unsigned copies of both applications and supporting

5

affidavits were admitted into evidence at trial without objection. JSCO hired a third party, the Regional Organized Crime Information Center (ROCIC), to analyze the data produced by the two carriers, AT&T and Sprint, and according to Detective Crull, "the cell tower locations or the cell phone locations during the time of the offense" corroborated Powell's account.

Angela Gardner, a "criminal intelligence analyst" with ROCIC, analyzed the electronic consumer data produced by the carriers. Specifically, JCSO requested ROCIC to perform "Cell Tower Mapping" for the two data sets, with a focus on October 2, 2018. She testified about her findings without objection. Gardner explained that when a person uses cellular data to operate their cell phone, it sends a signal that is typically received by the closest cell phone tower, and this activity, including the location of the tower, is recorded by the carrier. Based on her analysis of the data sets, which she limited to incoming and outgoing calls and texts, Gardner was able to produce maps tracking the general movements of the two cell phones as they were used on October 2. These maps, which were admitted into evidence without objection, generally show the two cell phones near the brothers' respective residences that morning; then traveling southwest along U.S. Highway 59; turning south onto State Highway 172 and arriving in "the La Ward area" before noon; continuing south to State Highway 35; traveling along State Highway 35, including near the Citgo gas station; turning north to return to State Highway 59; and ending near the brothers' residences that evening. Gardner agreed that, during this period, the two cell phones were "in roughly the same location at the same times throughout" the day.

6

Gary Smejkal, a reserve deputy with JCSO, testified that he investigated a series of burglaries in Jackson County that occurred in 2016 and that allegedly involved the Whites and "some" of the other people alleged to be members of the combination in this case. Deputy Smejkal testified that his investigation resulted in separate indictments against the Whites, Lloyd Miller, and Dennis Rivers for engaging in organized criminal activity that remained pending at the time of trial. He also confirmed that the Texas Department of Criminal Justice (TDCJ) had identified Rivers as a member of a criminal street gang "that goes by the name of 59 PIRU or 59 Bounty Hunter Bloods." The Whites objected at various times during this line of questioning, and the trial court overruled most of the objections. The trial court generally agreed with the State that evidence of the Whites' prior crimes was probative of whether the Whites committed the predicate theft with intent to maintain or participate in a combination or as members of a criminal street gang. Deputy Smejkal also testified that through his investigation, he obtained the cell phone numbers for Nelsin and Jessie, and these numbers were passed along to Detective Crull to aid him in his 2018 investigation. For instance, Jessie's number was included in a "book-in report" when Jessie was previously arrested and detained in the Jackson County jail.

Finally, Jason McCarrell testified that he "worked for [JCSO] from 2006 until 2017" and was involved in the 2016 investigation. The State read the names of each person alleged in the superseding indictment to be part of the combination in this case and asked whether "some of those people" formed a combination to commit the burglaries in 2016. McCarrell responded, "Yes, they were." He also said that Miller "admitted to being a

7

member of [59 PIRU or Bounty Hunter Bloods] during an interview" and that TDCJ confirmed Rivers' membership in the same gang. He said that Miller "minimized" the Whites' involvement in the 2016 burglaries. However, without objection, McCarrell later testified that he determined through his investigation that Nelsin and Jessie were involved in the 2016 burglaries and that he was aware that a separate case against them was set for trial later that year. He "[a]bsolutely" agreed that, although "2016 is a different year than 2018," "continuing crimes or criminal activity, can . . . stretch for a number of years."

As to the evidence concerning the 2016 burglaries, the State emphasized during closing arguments that "members of the combination can change over time" and "[t]hat is why you heard about other crimes." The State continued, "Why did you hear about possible other engaging? Because I got to show criminal activities. Criminal activities. Okay? And that's all the other stuff that they were involved in. All right?" The State also asked the jury to find that the Whites had committed the predicate offense as members of a criminal street gang: "If it's not a combination, it could be a criminal street gang. You heard about one, and some of the members being involved [in a gang]." The State suggested that the jury could infer that the Whites are members of a gang because "[b]irds of a feather flock together." The State also explained that the jury did not have to be unanimous on the manner and means "[a]s long as twelve people believe at least one of these has been proved beyond a reasonable doubt." The State revealed that it included the gang allegation in the superseding indictment "to cast as wide a net as possible because everybody might see it a little bit different."

At the close of evidence, the State abandoned Count II of the indictment, and the

8

jury found Nelsin and Jessie guilty of engaging in organized criminal activity while committing the predicate offense of felony theft.[1] The jury also found that Burt was an elderly individual, as alleged in the indictment. Finally, during the punishment phase, the jury found that Nelsin was a repeat felony offender and sentenced him to thirty years' incarceration. No motion for new trial was filed on behalf of Nelsin, and this appeal followed.

## II. SUFFICIENCY

Nelsin first complains that the evidence was insufficient to support his conviction because "[t]he State failed to present sufficient proof that [Nelsin] and at least two others listed in the indictment had engaged in a continuous course of criminal activity required to prove the offense of engaging in organized criminal activity." Nelsin acknowledges Powell's testimony that he, Nelsin, and Jessie committed a total of "seven or eight" tractor thefts, but Nelsin claims that the State failed to sufficiently corroborate Powell's accomplice witness testimony about a continuous course of criminal activity.[2]

## A. Standard of Review

To satisfy constitutional due process requirements, a criminal conviction must be supported by sufficient evidence. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App.

---

[1] The State elected to abandon Count II based on the belief that a conviction for the predicate offense would be "subsume[d]" by a conviction for engaging in organized criminal activity. We note that the Double Jeopardy Clause does not prohibit multiple punishments in a single prosecution for engaging in organized criminal activity and its underlying predicate offense. *Garza v. State*, 213 S.W.3d 338, 352 (Tex. Crim. App. 2007).

[2] Nelsin also argues that the evidence was insufficient to show that he committed the predicate offense as a member of a criminal street gang. Given our disposition, we do not reach this sub-issue concerning the State's alternative theory of the case. *See* TEX. R. APP. P. 47.1

2009). "Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In conducting a sufficiency review, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences from the evidence in a manner that supports the verdict. *Id.* "We may not re-weigh the evidence or substitute our judgment for that of the factfinder." *Id.* We consider all the evidence in the record, regardless of whether the evidence was properly or improperly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We measure the sufficiency of the evidence against "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

A person engages in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member

of a criminal street gang, the person commits or conspires to commit one or more [predicate offenses, including theft]." TEX. PENAL CODE § 71.02(a)(1).[3] A "combination" is "three or more persons who collaborate in carrying on criminal activities." *Id.* § 71.01(a).

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. art. 38.14. In the jury charge, Powell was declared an accomplice witness as a matter of law, and the jury was instructed on the application of the accomplice-witness rule. *See Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011) ("A witness who is indicted for the same offense or a lesser-included offense as the accused is an accomplice as a matter of law.").

In conducting a sufficiency review where the accomplice-witness rule applies, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). "The corroboration requirement in Article 38.14 does not apply separately to each element of the offense charged or to each aspect of the accomplice's testimony. If that were so, there would be no value in the testimony at all." *State v. Ambrose*, 487 S.W.3d 587, 598 (Tex. Crim. App. 2016). "Rather, the evidence must simply link the accused in some way to the commission of the crime and show that rational jurors could

---

[3] Throughout this memorandum opinion, we are citing the version of section 71.02 in effect at the time of the alleged offense. *See* Act of May 26, 2015, 84th Leg., R.S., ch. 333, § 16, sec. 71.02, 2015 Tex. Gen. Laws 1508, 1516 (amended 2019, 2021, 2023, 2025) (current version at TEX. PENAL CODE § 71.02).

conclude that this evidence sufficiently tended to connect the accused to the offense." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (citation modified). "While the accused's mere presence in the company of the accomplice before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense." *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). The tends-to-connect standard does not present a high threshold as the "evidence need not prove the defendant's guilt beyond a reasonable doubt by itself." *Solomon*, 49 S.W.3d at 361. "Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration." *Dowthitt*, 931 S.W.2d at 249. Each case is fact specific, and corroboration may be shown through direct or circumstantial evidence. *Smith*, 332 S.W.3d at 442. As with any sufficiency review, "when there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence." *Id.*

## B.    Discussion

Nelsin does not dispute that Powell's testimony was legally sufficient to establish that the three men committed the predicate offense with the intent to maintain a combination. *See* TEX. PENAL CODE § 71.02(a)(1); *Hernandez v. State*, 585 S.W.3d 537, 547–48 (Tex. App.—San Antonio 2019, pet. ref'd) ("Under the *Jackson v. Virginia* sufficiency standard, uncorroborated accomplice witness testimony 'can be sufficient to support a conviction.'" (quoting *Taylor v. State*, 10 S.W.3d 673, 684 (Tex. Crim. App.

12

2000))). Rather, Nelsin claims the non-accomplice evidence failed to corroborate Powell's testimony that the three men had participated in similar thefts before the predicate offense in this case. But the State was not required to corroborate each element of the engaging offense. *See Ambrose*, 487 S.W.3d at 598. To corroborate Powell's testimony, the State was only required to "link [Nelsin] in some way to the commission of the crime." *Malone*, 253 S.W.3d at 257.

Viewed in the light most favorable to the verdict, the non-accomplice evidence establishes that the Whites were with Powell before, during, and after the commission of the predicate offense, including at the crime scene. Specifically, the cell-site location evidence placed the Whites near the "very rural" crime scene around the time of the offense; Roberts observed two vehicles park near Burt's property immediately before the commission of the offense; Schicke recorded the license plate number of the truck used to tow Burt's tractor, which ultimately showed that Powell's vehicle was used during the commission of the offense; Roberts observed the two vehicles drive away from the crime scene, heading the same direction on Highway 172; and the cell-site location evidence placed the Whites in the same area where the stolen tractor was allegedly sold later that day.[4] *Cf. Johnson v. State*, 682 S.W.3d 638, 650 (Tex. App.—Tyler 2024, pet. ref'd) (finding evidence legally sufficient to support conviction for aggravated robbery where appellant's identity was established primarily through circumstantial cell-site location evidence).

---

[4] Nelsin himself recognizes the importance of the cell-site location evidence, arguing in his third issue that his trial counsel's failure to challenge the admissibility of the evidence was harmful because it "was necessary to corroborate [Powell's] testimony," and "[w]ithout it, the State would have been unable to prove its case beyond a reasonable doubt."

Because Nelsin's mere presence with Powell at the crime scene is alone not sufficient to corroborate Powell's testimony, we look to see if there were other suspicious circumstances connecting Nelsin to the offense. *See Dowthitt*, 931 S.W.2d at 249. Although Roberts was standing too far away to positively identify the three occupants of the two vehicles and gave conflicting accounts about the ethnicity of one of the occupants, he was unequivocal that all three actively participated in the commission of the offense. Roberts described how one person quickly loaded the tractor onto the trailer while the other two stood lookout, and how both vehicles then fled the scene in the same direction.

We conclude that the combined and cumulative force of the foregoing evidence was sufficient to corroborate Powell's testimony because it "tended to connect" the Whites to the offense. *See Malone*, 253 S.W.3d at 257. Nelsin's first issue is overruled.

### III. UNRAISED LIMITATIONS DEFENSE

Nelsin next argues that his trial counsel was ineffective for failing to raise a limitations defense to Count I because: (1) the superseding indictment was filed outside the limitations period; (2) the superseding indictment lacked tolling language; and (3) tolling language would not have saved the superseding indictment because "[i]t significantly broadened and substantially amended the charges brought in the first indictment."[5]

### A. Standard of Review

The right to reasonably effective assistance of counsel is enshrined in both the United States Constitution and the Texas Constitution. *See* U.S. CONST. amend. VI; TEX.

---

[5] Nelsin does not dispute that the original indictment tolled limitations as to Count II.

14

CONST. art. I, § 10; *see also* TEX. CODE CRIM. PROC. art. 1.051. To establish an ineffective assistance claim, the appellant must first demonstrate, "by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Because there "are countless ways to provide effective assistance in any given case," a reviewing court must be highly deferential and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (citation modified). To overcome this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Trial counsel should generally be given an opportunity to explain his actions before being found ineffective. *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). "In the face of an undeveloped record, counsel should be found ineffective only if his conduct was so outrageous that no competent attorney would have engaged in it." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021) (citation modified); *see Massaro v. United States*, 538 U.S. 500, 508 (2003) ("There may be cases in which trial counsel's ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal. There may be instances, too, when obvious deficiencies in representation will be addressed by an appellate court *sua sponte*."). A

15

single egregious error may constitute ineffective assistance as a matter of law, but we generally disregard isolated errors that are not indicative of the overall representation. *Lopez*, 343 S.W.3d at 143.

To establish ineffective assistance of counsel for failure to file a motion with the court, a defendant must demonstrate that he would have succeeded on the motion. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). "Counsel's performance will be measured against the state of the law in effect during the time of trial and we will not find counsel ineffective where the claimed error is based upon unsettled law." *Ex parte Chandler*, 182 S.W.3d 350, 359 (Tex. Crim. App. 2005) (citation modified). Conversely, "ignorance of well-defined general laws, statutes and legal propositions is not excusable and such ignorance may lead to a finding of constitutionally deficient assistance of counsel." *Ex parte Lane*, 670 S.W.3d 662, 671 (Tex. Crim. App. 2023) (citation modified).

Yet, even if the performance was deficient, the judgment will not be set aside unless counsel's error had a prejudicial effect on the outcome. *Strickland*, 466 U.S. at 691. "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Id.* at 695–96. "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. The test for prejudice requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In conducting our

analysis, we consider the totality of the evidence before the factfinder. *Id.* at 695.

**B.     Applicable Law**

**1.     Engaging in Organized Criminal Activity**

A person commits theft if they take property without the owner's consent and with intent to deprive the owner of the property. TEX. PENAL CODE § 31.03. As noted, a person engages in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit one or more [predicate offenses, including theft]." *Id.* § 71.02(a)(1). Thus, to establish participation in a combination, the State must prove "that the appellant intended to establish, maintain, or participate in a group of three or more, in which the members intend to work together in a continuing course of criminal activities." *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999) (citation modified). "The combination's members must be more than temporarily organized to engage in a single criminal episode." *Lashley v. State*, 401 S.W.3d 738, 744 (Tex. App.—Houston [14th Dist.] 2013, no pet.). "Evidence must be offered that allows a jury to infer that the group intended to continue engaging in illegality over a period of time." *Id.* at 745.

A "criminal street gang" is defined as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." TEX. PENAL CODE § 71.01(d). To establish that a defendant committed a predicate offense "as a member of a criminal street gang," the State must prove "that the defendant was acting in the role, capacity, or

function of a gang member at the time of the offense." *Zuniga v. State*, 551 S.W.3d 729, 736 (Tex. Crim. App. 2018) (citation modified). "To satisfy this requirement, the evidence need only be sufficient to show some nexus or relationship between the commission of the underlying offense and the defendant's gang membership." *Id.* at 739.

There is also a "distinction between engaging based upon a conspiracy and engaging based upon commission." *O'Brien v. State*, 544 S.W.3d 376, 392 (Tex. Crim. App. 2018). These "are two means of engaging in organized criminal activity" that require different proof. *McIntosh v. State*, 52 S.W.3d 196, 199 (Tex. Crim. App. 2001) ("To commit the offense by the first means, the defendant commits one or more of the enumerated offenses with the requisite intent. The second means allows conviction if the accused conspires to commit the object offense and an overt act is committed by the accused and another member of the combination." (citation modified)).

Looking to the purpose of the statute, "the focus is on the creation of crime rings that result from the pursuit of a collective and continuous course of criminal behavior." *O'Brien*, 544 S.W.3d at 388. Consequently, "the gravamen of the offense of engaging in organized criminal activity is the circumstance surrounding the conduct." *Id.* at 391.

### 2. Limitations Defense

For felonies subject to a statute of limitations, the indictment must be presented within the limitations period, and the State's failure to do so acts as an absolute bar to prosecution if properly raised. *See* TEX. CODE CRIM. PROC. art. 12.01; *Ex parte Smith*, 178 S.W.3d 797, 802 (Tex. Crim. App. 2005) ("Limitations is an absolute bar to prosecution."). However, as a defense to prosecution, it "is forfeited if not asserted at or before the

guilt/innocence stage of trial." *Proctor v. State*, 967 S.W.2d 840, 844 (Tex. Crim. App. 1998). Counsel's failure to timely raise a limitations defense can support an ineffective assistance claim on direct appeal. *See Compton v. State*, 202 S.W.3d 416, 421 (Tex. App.—Tyler 2006, no pet.).

An indictment must indicate, on its face, that the prosecution is not barred by the applicable statute of limitations. TEX. CODE CRIM. PROC. art. 21.02(6) ("The time mentioned must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation."). "The time during the pendency of an indictment, information, or complaint shall not be computed in the period of limitation." *Id.* art. 12.05(b). If the State wishes to rely on tolling under section 12.05(b), it must plead "tolling facts" in the superseding "indictment itself, so that the indictment will indicate on its face that a prosecution thereunder is not barred by the applicable statute of limitations." *Tita v. State*, 267 S.W.3d 33, 37–38 (Tex. Crim. App. 2008).

But "not just any indictment will toll the statute of limitations." *State v. West*, 632 S.W.3d 908, 911 (Tex. Crim. App. 2021). Because an indictment "must give adequate notice to prepare a defense," the Texas Court of Criminal Appeals has explained that "a subsequent indictment is barred by the statute of limitations if it broadens or substantially amends the charges in the original indictment." *Id.* (citation modified). On the other hand, "a prior indictment tolls the statute of limitations for a subsequent indictment when both indictments allege the same conduct, same act, or same transaction." *Id.* (citation modified). The key inquiry, then, is whether the initial indictment "provided the type of clear notice necessary to identify and preserve the facts and witnesses essential to

19

defend against the subsequent indictment." *Id.* at 914. Whether an indictment is barred by the statute of limitations is a question of law we review de novo. *Martinez v. State*, 527 S.W.3d 310, 322 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd).

"The limitation period for criminal conspiracy or organized criminal activity is the same as that of the most serious offense that is the object of the conspiracy or the organized criminal activity." TEX. CODE CRIM. PROC. art. 12.03(b). The limitations period for felony theft is "five years from the date of the commission of the offense." *Id.* art. 12.01(4)(A).

## C. The Indictments

As relevant here, the original indictment, presented on March 25, 2020, alleged that:

> **NELSIN RAY WHITE**, on or about the **2nd** day of **October**, A.D., **2018**, and before the presentment of this indictment, in said County and State, did then and there
> ### COUNT 1
> with the intent to establish, maintain, or participate in a combination or in the profits of a combination, the combination consisting of the defendant, **NELSIN RAY WHITE, Jessie Jerome White, and Blake Matthew Powell,** who collaborated in carrying on the hereinafter described criminal activity, conspire to commit the felony offense of **Theft of Property** by agreeing with each other that they would engage in conduct that constituted the offense, and the defendant performed an overt act in pursuance of the agreement, to-wit: the defendant, **NELSIN RAY WHITE,** as a principal or party as defined by Section 7.01 or Section 7.02 of the Texas Penal Code did then and there unlawfully appropriate, by acquiring or otherwise exercising control over, property, to-wit: a John Deere Tractor and a John Deere front end loader, of the value of $30,000 or more but less than $150,000, from **George Weldon Burt,** the owner thereof, without the effective consent of the owner, and with intent to deprive the owner of the property.

The superseding indictment, presented on May 3, 2024, included the following allegations

20

with respect to Count I:

**NELSIN RAY WHITE, JESSIE JEROME WHITE, BLAKE MATTHEW POWELL**, as members of a criminal street gang, or a criminal combination, before the presentment of this indictment, on or about the **2nd day of October 2018**, in said Jackson County and State of Texas, did then and there, commit two or more offenses, pursuant to the same transaction; or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or the offenses are the repeated commission of the same of similar offenses; namely:

### COUNT 1 – Engaging in Organized Criminal Activity

1. As a member of a criminal street gang, to-wit: "59 PIRU" or "Bounty Hunter Blood," OR

2. With the intent to establish, maintain or participate in a combination, OR

3. With the intent to participate in the profits of a combination,

4. Said combination consisting of Nelsin Ray White, Jessie Jerome White, Blake Matthew Powell, Dennis Lee Rivers, Latrice Gail Miller-Rivers, Lloyd Dean Miller, Erik Devay Jackson, Ronald Hookfin Jr., Brian James Kaminsky, and other persons unknown to the grand jurors,

5. The defendant did commit Theft, OR

6. The defendants did conspire to commit Theft, such conspiracy to commit consisting of:

   a. Agreeing with one or more combination members to engage in Theft, AND

   b. The defendant and one or more other combination members, each performed an overt act, to-wit:

      (1) Identify and locate property to be appropriated,

      (2) Rendezvous with combination members in the vicinity of the target property,

      (3) Conduct surveillance of the target property,

21

(4)      Provide look-out during the unlawful appropriation,

(5)      Operate and [l]oad the unlawfully appropriated property for transport,

(6)      Transport the unlawfully appropriated property away from [the] location,

(7)      Coordinate the sale of [the] unlawfully appropriated property, and

(8)      Sale [sic] the unlawfully appropriated property[.]

## D.    Discussion

Nelsin claims that his trial counsel was constitutionally deficient because it was apparent from the face of the two indictments that he had a meritorious limitations defense to Count I, and yet his counsel failed to timely raise the defense in a motion to dismiss Count I of the superseding indictment. [6] He correctly notes that the superseding indictment was presented seven months after the five-year statute of limitations expired on Count I and lacked tolling language referring to the original indictment. *See id.* arts. 12.01(4)(A), 12.03(b); *Tita*, 267 S.W.3d at 38 (explaining that "an indictment must indicate on its face that a prosecution thereunder is not barred by the applicable statute of limitations and that an indictment that does not indicate such is subject to a pretrial motion to dismiss"). Nelsin further argues that the superseding indictment could not be cured with an amended indictment containing tolling language because the original indictment failed

---

[6] Nelsin also claims that he was entitled to a jury instruction on limitations based on the evidence presented at trial, but that his counsel failed to request such an instruction. *See Proctor v. State*, 967 S.W.2d 840, 844 (Tex. Crim. App. 1998). ("At trial, the defendant may assert the defense by requesting a jury instruction on limitations if there is some evidence before the jury, from any source, that the prosecution is limitations-barred. If there is some such evidence and the defendant requests a jury instruction on the limitations defense, then the State must prove beyond a reasonable doubt that the prosecution is not limitations-barred.").

22

to give him notice of the allegations in the superseding indictment, which, according to Nelsin, "expanded the manner and means of committing the offense of engaging in organized criminal activity." He points out that, unlike the original indictment, the superseding indictment alleges in the disjunctive that Nelsin acted as a member of a combination or "a criminal street gang," and that rather than just conspiring to commit the predicate theft, it also alleged that he actually committed the theft. Although this is a direct appeal and trial counsel has not yet explained himself, Nelsin argues that no competent attorney would wittingly forfeit their client's limitations defense to the most serious offense charged, an omission that resulted in his conviction for that offense and a thirty-year sentence.

The State responds that the original indictment "clearly" tolled limitations because it included the "same offense of [engaging in organized criminal activity], involving the same listed co-conspirators, on the same date of offense, and [was] predicated on the same underlying theft." Building on this premise, the State contends that Nelsin's trial counsel "should not be held ineffective for failing to perform the useless act of seeking to quash a subsequent indictment that could so easily have been cured" by an amended indictment with proper tolling language. Other than offering these broad strokes, the State has not meaningfully engaged with Nelsin's argument that "the superseding indictment significantly broadened and substantially amended the charges brought in the first indictment" because it "expanded the manner and means of committing the offense." *See West*, 632 S.W.3d at 911; *see also Watkins v. State*, No. 10-23-00040-CR, 2023 WL 8271793, at *4 (Tex. App.—Waco Nov. 30, 2023, no pet.) (mem. op., not designated for

23

publication) (finding under *West* that a prior indictment tolled limitations because the superseding indictment "did not allege a separate and discrete offense from the original indictment *or alternative manner and means for the commission of the charged offense*" (emphasis added)).

It is undisputed that the superseding indictment was presented outside the limitations period. Therefore, to determine whether the original indictment tolled limitations, we consider whether it "provided the type of clear notice necessary to identify and preserve the facts and witnesses essential to defend against the subsequent indictment." *West*, 632 S.W.3d at 914. We conclude that it did not.

While it is true, as the State suggests, that both indictments were based on the same predicate offense, "the gravamen of the offense of engaging in organized criminal activity is the circumstance surrounding the conduct," *O'Brien*, 544 S.W.3d at 391, and there are two ways the State can prove "the creation of crime rings that result from the pursuit of a collective and continuous course of criminal behavior." *Id.* at 388. That is, the defendant acted either as a member of a combination or a criminal street gang. *See* TEX. PENAL CODE § 71.02(a)(1). While the original indictment alleged that Nelsin acted as a member of a combination, the superseding indictment alleged in the disjunctive that Nelsin acted "[a]s [a] member[] of a criminal street gang, or a criminal combination." These are distinct manners and means that require different proof by the State, and by extension, naturally give rise to different defensive strategies. *See Curiel v. State*, 243 S.W.3d 10, 15 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("The State's proof, therefore, must show that appellant had the intent to establish, maintain or participate as

24

a member of a criminal street gang, but need not further show that appellant had the intent to act in a combination, or in the profits of a combination, because those are alternative ways of proving an offense of engaging in organized criminal activity." (citation modified)); *West*, 632 S.W.3d at 915 (explaining that the tolling inquiry turns "on whether the defensive strategy to the prior indictment's allegations would have necessarily translated into defenses to the subsequent indictment's allegations"). To establish that a defendant committed a predicate offense "as a member of a criminal street gang," the State must prove "that the defendant was acting in the role, capacity, or function of a gang member at the time of the offense." *Zuniga*, 551 S.W.3d at 736 (citation modified). In comparison, to establish participation in a combination, the State must prove "that the appellant intended to establish, maintain, or participate in a group of three or more, in which the members intend to work together in a continuing course of criminal activities." *Nguyen*, 1 S.W.3d at 697 (citation modified). Indeed, as the prosecutor said during closing arguments, the State added the gang allegation in the superseding indictment "to cast as wide a net as possible because everybody might see it a little bit different."

Moreover, in the original indictment, the State alleged that only Nelsin, Jessie, and Powell formed a combination by conspiring to commit the underlying theft. Contrary to the State's assertion, the superseding indictment did not merely allege the "same listed co-conspirators" contained in the original indictment. Rather, the superseding indictment named six additional members of the combination "and other persons unknown to the grand jurors." The original indictment did not provide Nelsin "clear notice" in 2020 that one of the State's primary theories at trial in 2024 would be that Nelsin committed the

predicate offense as part of a much larger criminal enterprise that allegedly committed vehicle thefts and burglaries across seven counties in 2016, two years prior to the predicate offense in this case. *See West*, 632 S.W.3d at 914. The value the State placed on this evidence is reflected in the time it spent presenting it to the jury. Of the four police officers the State called as witnesses, three of them testified about the 2016 incidents, and two of them testified exclusively about their investigations into the 2016 incidents. Even though Nelsin and Jessie were separately indicted on another count of engaging in organized criminal activity for their alleged involvement in the 2016 "crime ring" that "[i]nvolved a large group of suspects," the State insisted through its questions and argument that "members of the combination can change over time," and therefore, the jury should infer that the predicate offense in this case was committed with the intent to maintain the much larger combination alleged in the superseding indictment. *See* TEX. PENAL CODE § 71.02(a)(1). Nothing in the original indictment suggested that Nelsin needed to "identify and preserve the facts and witnesses essential to defend against" those expansive allegations. *West*, 632 S.W.3d at 914.

For these reasons, we conclude that the original indictment did not toll limitations as to Count I of the superseding indictment. *See id*.; *see also Watkins*, 2023 WL 8271793, at *4. Consequently, Nelsin has demonstrated that a motion to dismiss Count I of the superseding indictment would have ultimately been successful. *See Jackson*, 973 S.W.2d at 957. Counsel therefore provided ineffective assistance by forfeiting Nelsin's meritorious limitations defense. *See Compton*, 202 S.W.3d at 421; *Lopez*, 343 S.W.3d at 143. Finally, since a properly raised limitations defense is an absolute bar to prosecution, we find that

26

counsel's omission was clearly prejudicial to Nelsin, who was convicted of the more serious, time-barred offense and sentenced to thirty years' confinement. *See Strickland*, 466 U.S. at 694. Accordingly, we reverse Nelsin's conviction for engaging in organized criminal activity and remand to the trial court for a new trial.[7]

## IV. CONCLUSION

We reverse Nelsin's conviction and remand to the trial court for further proceedings consistent with this memorandum opinion.

JENNY CRON
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
14th day of May, 2026.

---

[7] Based on our disposition of this issue, we do not reach Nelsin's other issues. *See* TEX. R. APP. P. 47.1.